# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| MICHELLE PRESCOTT, et al., | ) |
| | ) |
| PLAINTIFFS | ) |
| | ) |
| | ) |
| v. | )    CIVIL NO. 09-322-P-H |
| | ) |
| PRUDENTIAL INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| DEFENDANT | ) |

## MEMORANDUM ORDER AND DECISION ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

The plaintiff, Michelle Prescott, seeks unpaid wages and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216, and under Maine employment law, 26 M.R.S.A. §§ 664, 670. She asks that her lawsuit be certified conditionally as a collective action under the FLSA, 29 U.S.C. § 216(b), and that notice issue to other employees accordingly. Her employer, the defendant Prudential Insurance Company ("Prudential"), opposes her request for a collective action and notice. After oral argument on June 9, 2010, I **GRANT** the motion in part. Because the certification is conditional, Prudential may move to decertify the collective action after discovery is complete.

An FLSA collective action is similar to but different from a conventional class action. Like a class action under Federal Rule of Civil Procedure 23, a collective action under 29 U.S.C. § 216(b) gives "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and

allows for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170 (1989) (discussing 29 U.S.C. § 216(b) as incorporated by the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 626(b)). A significant distinction, however, is that potential plaintiffs in an FLSA collective action must "opt in" to be included, while persons fitting the definition of a Rule 23 class must "opt out" to be excluded. The FLSA also does not incorporate Rule 23's numerosity, commonality, typicality, and adequacy criteria for class certification. It requires only that collective action plaintiffs be "similarly situated." 29 U.S.C. § 216(b). Thus, the FLSA allows plaintiffs to proceed collectively based on a lesser showing than that required by Rule 23. O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 584 (6th Cir. 2009) (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). The Supreme Court has authorized court-ordered notice of a pending collective action to potential plaintiffs, but has otherwise made only passing reference to the procedure for certifying a collective action, Hoffmann-La Roche, 493 U.S. at 169, and the First Circuit likewise has not addressed the issue. The law I apply, therefore, comes from other Circuits and from trial court decisions.

The issues on this motion are (1) what burden confronts a plaintiff in making the required showing, (2) has the plaintiff shown that she and similar Prudential employees have claims against Prudential for similar violations of the FLSA, (3) if so, what job categories and locations at Prudential are similarly situated for the purposes of a collective action, (4) what dates are covered, and

(5) what should happen at this point with the other employees (five from Maine; one from New Jersey) who have filed consents to opt in as plaintiffs?

## FACTUAL AND PROCEDURAL BACKGROUND

Prudential processes short-term and long-term disability claims as well as Family and Medical Leave Act ("FML") claims at offices in Portland, Maine, and Roseland, New Jersey. Simmons Decl. ¶¶ 2-3 (Ex. 3 to Def.'s Resp. in Opp'n to Pl.'s Mot. for Certification of Collective Action (Docket Item 61)) (Docket Item 61-4). The same policies and practices apply in Prudential's Maine and New Jersey offices with respect to compensation, recording of time worked, and scheduling of work by hourly "disability claims handlers." Stipulation in Lieu of Rule 30(b)(6) Deps. ¶¶ 1-4 (Ex. B to Pl.'s Mot. for Certification of Collective Action (Docket Item 56)) (Docket Item 56-3). Disability claims handlers perform the same kind of work at both sites, id. ¶ 5, and hourly employees in the same classification receive the same training in Maine and New Jersey, id. ¶ 6.

As part of its disability operations, Prudential employs hourly employees with titles such as "Disability Claim Manager"[1] and "FML Examiner," Simmons Decl. ¶¶ 2-3, and salaried employees with titles such as "Disability Claims Technician," Danforth 30(b)(6) Dep. 7, 17, Feb. 23, 2010 (Ex. 9 to Def.'s Resp.) (Docket Item 61-10). Since 2003, Prudential has employed more than 225

---

[1] The parties refer to Disability Claim Managers as "DCMs." The entry level position is "DCM-I," while claims handlers with more experience are designated, "DCM-II." Simmons Decl. ¶ 2 (Ex. 3 to Def.'s Resp. in Opp'n to Pl.'s Mot. for Certification of Collective Action (Docket Item 61)) (Docket Item 61-1). The parties refer to Disability Claim Technicians as "DCTs" or "DC Techs" and to FML Examiners as "FMLs" and "FML Coordinators."

persons as Disability Claims Managers and FML Examiners (currently forty-five Disability Claims Managers and eighteen FML Examiners in Maine and ninety-four Disability Claims Managers in New Jersey). Simmons Decl. ¶ 5.

Disability Claims Managers are not "managers" of other employees, *i.e.,* they do not hold management positions. They work along with Disability Claims Technicians (and sometimes FML Examiners) as "claims payers" or claims examiners (essentially claims handlers) on teams that process long- and short-term disability claims and, in the FML unit, claims for leave eligibility. Danforth 30(b)(6) Dep. 7; Brown Dep. 87-88, Dec. 15, 2009 (Ex. E2 to Pl.'s Mot. for Certification) (Docket Item 56-7); Anderson Decl. ¶ 2 (Ex. 1 to Def.'s Resp.) (Docket Item 61-2). The claims handling teams may also include one or more "team leads" (supervisors) and Disability Claims Specialists (a kind of supervisor). Danforth 30(b)(6) Dep. 7. Each team is also supervised by a manager, Anderson Decl. ¶¶ 1-2, and a vice president oversees overall claims operations, Danforth 30(b)(6) Dep. 7, 31. Disability Claims Managers and FML Examiners are the only hourly or nonexempt employees on the teams. Danforth 30(b)(6) Dep. 17; Brown Dep. 35.[2] Disability Claims Managers review the medical information in claims, contact claimants, write letters pertaining to claims, consult with doctors and nurses, present claims for approval in "facilitated claims discussions" (involving a manager, a nurse, and a vocational rehabilitation specialist), and otherwise manage pending, active, inactive, and

---

[2] Under 29 U.S.C. § 213(a), employees who perform bona fide executive, administrative, or professional functions or who are employed in certain industries, including fishing and agriculture, are exempt from the FLSA's wage requirements. Employees who are subject to the FLSA are termed "nonexempt." 29 C.F.R. § 541.702.

suspended claims so long as a file is open. Prescott Dep. 47–49, Nov. 5, 2009 (Ex. E1 to Pl.'s Mot. for Certification) (Docket Item 56-6).

Disability Claims Technicians work on the same teams as Disability Claims Managers. Danforth 30(b)(6) Dep. 7. They have some different "core competencies" (skills) from Disability Claims Managers, id. at 22-23, may handle claims with a "higher level of risk," id. at 141-42, and perform some "project work" that Disability Claims Managers do not, id. at 163-64. But, while they carry a smaller "block" of claims, id. at 165, Disability Claims Technicians handle the same kinds of disability claims as Disability Claims Managers in essentially the same way, id. at 49–50, 137, 144-45, subject to similar, but "tougher" performance "metrics" (measures of claims processed per month, etc.), id. at 54, 149, 153. Disability Claims Technicians and Disability Claims Managers are referred to collectively as "disability claims analysts." Id. at 150. In the short-term disability unit, Disability Claims Technicians review Disability Claims Managers' work, but in the long-term disability unit, they do not and have the same duties as Disability Claims Managers. Id. at 134, 153.

FML Examiners work on teams that process FML leave eligibility claims and short-term disability claims. Simmons Decl. ¶ 3. The FML teams also include Disability Claims Managers, who handle concurrent FML and disability claims. Brown Dep. 87.

Prudential uses an "exception-based" system for tracking the hours worked by nonexempt claims handlers such as Disability Claims Managers. Def.'s Answers & Objections to Pl.'s 1st Interrogs. at 6 (Ex. 1 to Add'l Attach. to

Pl.'s Mot. for Certification (Docket Item 59)) (Docket Item 59-1).[3] Disability Claims Managers are paid based on a 37.5-hour work week, id., but they work on different schedules. Disability Claims Managers consult with their supervisors to establish a fixed schedule tailored to the needs of clients (*e.g.,* in different time zones) and the Disability Claims Managers' personal commitments. Simmons Decl. ¶ 6. Disability Claims Managers can work their hours in the Prudential offices or at home. Id.

Prudential's official policy is that nonexempt employees such as Disability Claims Managers and FML Examiners must receive approval from management to work more than 37.5 hours in a week. Def.'s Answers & Objections at 6; Prudential HR Policies (Overtime) at 1 (Ex. 17 to Def.'s Resp.) (Docket Item 61-18). In particular, overtime must be preapproved, and managers authorize overtime on either a group or an individual basis. Def.'s Answers & Objections at 6. If overtime is approved, nonexempt employees are responsible for recording and submitting their hours for payment. Id.; see also Prudential HR Policies (Overtime) at 1-2. Prudential budgets for overtime and from 2007-2009 paid overtime wages to Disability Claims Managers. Simmons Decl. ¶ 8.

---

[3] Prudential has stated that FML Examiners "operate under a different management structure" without elaborating how exactly the management structure differs. Def.'s Resp. at 6 n.5. The official overtime policies submitted by Prudential apply to all nonexempt employees and draw no distinctions between Disability Claims Managers and FML Examiners. See Prudential HR Policies (Overtime) (Ex. 17 to Def.'s Resp.) (Docket Item 61-18). The testimony of Angela Brown also shows that even if FML Examiners schedule their time differently from Disability Claims Managers with regard to flexibility and location, they are subject to the same policies and procedures regarding hours and overtime. See Brown Dep. 74-76, 103, Dec. 15, 2009 (Ex. E2 to Pl.'s Mot. for Certification) (Docket Item 56-7).

The plaintiff Michelle Prescott works as a Disability Claims Manager in Maine. Compl. ¶ 16 (Docket Item 1). She alleges that, notwithstanding Prudential's official policy on overtime, she typically works 47.5 to 52.5 hours per week and "is generally paid nothing" for work performed in excess of 37.5 hours. Id. She alleges that Prudential knowingly assigns disability claims handlers more work than can be completed in a 37.5-hour week, but refuses to approve (or pay) gap-time (the straight time between 37.5 and 40 hours) or overtime (time over 40 hours). Pl.'s Mem. in Support of Mot. for Collective Action Certification at 11-12 (Docket Item 57). She terms this a "Don't Ask, Don't Tell" policy under which managers know that disability claims handlers have to work overtime, but do not actually ask them to work overtime and expect them not to request it—even though they do in fact work extra, off the clock hours. Id. Prescott says that due to this management practice, she and other disability claims handlers routinely work without pay. Compl. ¶¶ 21-22. She proposes a collective action class of disability claims handlers, including Disability Claims Managers, Disability Claims Technicians, and FML Examiners, who have worked for Prudential at any time since July 22, 2003 in Maine or since July 22, 2006 in New Jersey. Pl.'s Mot. for Certification at 1.[4]

---

[4] The plaintiff seeks certification of a collective action covering six-years in Maine based on the statute of limitations applicable to her Maine state law claim, but seeks to cover only three years in New Jersey based on the statute of limitations applicable to her FLSA claim. See 14 M.R.S.A. § 752; 29 U.S.C. §§ 216(b), 255(a).

**ANALYSIS**

*A.*   *Introduction*

The FLSA requires employers to pay employees minimum wages for forty hours of work per week and overtime wages for more than forty hours (unless they hold an executive, administrative, or professional position), 29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1).   It creates a private right of action for employees to recover these wages either individually or as part of a collective action comprising "other employees similarly situated."   29 U.S.C. § 216(b). But "the action does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent," <u>Cameron-Grant v. Maxim Healthcare Servs.</u>, 347 F.3d 1240, 1249 (11th Cir. 2003), and the trial court certifies that such opt-in plaintiffs are in fact "similarly situated" and that the collective action is procedurally manageable and fair, <u>O'Brien</u>, 575 F.3d at 584.   A collective action is thus "a fundamentally different creature than the Rule 23 class action" because "the existence of a collective action under § 216(b) [depends] on the active participation of other plaintiffs." <u>Cameron-Grant</u>, 347 F.3d at 1249; <u>see also</u> <u>La Chapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975) (describing the "fundamental, irreconcilable difference" between a Rule 23 class action and a collective action under 29 U.S.C. § 216(b)).   Although the FLSA does not provide for court-ordered notice of a pending collective action, the Supreme Court has held that "district courts have discretion . . . to implement 29 U.S.C. 216(b) . . . by facilitating notice to potential plaintiffs." <u>Hoffmann-La Roche,</u> 493 at 165.

Maine law also requires employers to pay most employees minimum wages for forty hours of work and overtime wages for more than forty hours of work in a week. 26 M.R.S.A. § 664. It provides a private right of action for employees to recover these wages. 26 M.R.S.A. § 670; see also Avery v. Kennebec Millwork, Inc., 861 A.2d 634, 637 (Me. 2004) ("Violations of section 664['s overtime provision] entitle employees to the remedies provided in section 670."). But Maine wage laws do not provide for an opt-in class action equivalent to a collective action under 29 U.S.C. § 216(b). See, e.g., Smart v. R.C. Moore, 2002 Me. Super. LEXIS 237 (Me. Super. Ct. Jan. 15, 2002) (explaining that for certification of a class action for claims under 26 M.R.S.A. § 664, plaintiffs must satisfy Maine Civil Rule 23); Jordan v. MBNA Mktg. Sys., 2001 Me. Super. LEXIS 290 (Me. Super. Ct. Aug. 3, 2001) (same).

Prescott has moved for certification of an FLSA collective action, but not of a state law class (which would be governed by Federal Rule 23).[5] My certification analysis therefore does not consider Rule 23's criteria for class certification or Prescott's state law claims.[6]

---

[5] Prescott's Complaint asserts Maine state law claims on behalf of Maine claims handlers who opt in to the collective action. Compl. ¶ 38 (Docket Item 1). At oral argument, her lawyer conceded that he was unaware of any Maine case that employed the FLSA collective action device to certify a Maine state law class. He also agreed that he was not in a position to seek certification under Rule 23 at this time for the Maine state claims and would probably need additional discovery. Indeed, notifying potential plaintiffs of a right simultaneously to opt in and to opt out could create huge difficulties. See David Borgen & Laura L. Ho, The Fair Labor Standards Act: Litigation of Wage & Hour Collective Actions Under the Fair Labor Standards Act, 7 EMPL. RTS. & EMPLOY. POL'Y J. 129, 150 (2003). Prudential's lawyer, however, said that if I determined to certify an FLSA collective action, Prudential would allow opt-in plaintiffs from Maine to litigate their Maine law claims as part of this lawsuit.

[6] No New Jersey state law claims are asserted.

***B.  The Plaintiff's Burden on the Motion***

The FLSA does not define "similarly situated" or prescribe a method for certifying a collective action.  O'Brien, 575 F.3d at 584.  The Supreme Court and the First Circuit have not addressed the issue, and the other Circuits have not drawn bright lines for determining whether employees are "similarly situated."[7]  See, e.g., Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) ("[W]e have not adopted any of the varying approaches for determining whether employees' claims are sufficiently similar to support maintenance of a representative action."); O'Brien, 575 F.3d at 585 ("We do not purport to create comprehensive criteria for informing the similarly-situated analysis."); Morgan v. Family Dollar Stores, 551 F.3d 1233, 1260 (11th Cir. 2008) ("[W]e [have] explained what the term does not mean—not what it does.").  Generally, however, courts have found that "similarly situated" employees have similar (not identical) job duties and pay provisions, Morgan, 551 F.3d at 1259-60 (citations omitted), and are "victims of a common policy or plan that violated the law," Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006)

---

[7] This may reflect an attempt to be flexible in view of the overall remedial purpose of the FLSA. For example, the Sixth Circuit has explained that employees can be similarly situated if they "suffer from a single, FLSA-violating policy" such that "proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs," but that they can also be similarly situated if "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 585 (6th Cir. 2009).  Similarly, the Tenth Circuit has noted that in making the similarly situated determination for the purposes of an ADEA collective action, trial courts should be mindful that pattern and practice claims may involve collective presentation of a company's regular practices followed by individualized proof of harm.  Thiessen v. GE Capital Corp., 267 F.3d 1095, 1106 (10th Cir. 2001); see also Alvarez v. City of Chicago, 605 F.3d 445, 449 & n.1 (7th Cir. 2010) ("If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions[,] [but] [t]here may also be cases . . . where the remedy is so tailored to each particular plaintiff that a collective action is inappropriate.").

(quoting <u>Roebuck v. Hudson Valley Farms, Inc.</u>, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)); <u>see also</u> <u>O'Brien</u>, 575 F.3d at 584 ("Showing a 'unified policy' of violations is not required." (citing <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1095 (11th Cir. 1996)); <u>Thiessen v. GE Capital Corp.</u>, 267 F.3d 1095, 1102 (10th Cir. 2001) (stating that similarly situated employees are "victims of a single decision, policy, or plan").

But the certification of a collective action "typically proceed[s] in two stages." <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 916 n.2 (5th Cir. 2008). The first stage determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, "based only on the pleadings and any affidavits which have been submitted." <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1213 (5th Cir. 1995), <u>overruled in part on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003)). At the first stage, the plaintiff "has the burden of showing a 'reasonable basis' for [her] claim that there are other similarly situated employees." <u>Morgan</u>, 551 F.3d at 1260 (citations omitted). In other words, the plaintiff must make "a modest factual showing" that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan. <u>Comer</u>, 454 F.3d at 547 (citations omitted); <u>see also</u> <u>Thiessen</u>, 267 F.3d at 1102 (stating that conditional certification requires "substantial allegations" (quotation and citation omitted)). The standard at the initial stage has been called "not particularly stringent," "fairly

lenient," "flexib[le]," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." Morgan, 551 F.3d at 1261. Under this "fairly lenient" standard, the initial stage analysis "typically results in 'conditional certification'" of a collective action. Hipp, 252 F.3d at 1218 (citation omitted).

Later, when discovery is complete, an employer may move to decertify the collective action. This is the "second" stage, and the court must then "make a factual determination as to whether there are similarly-situated employees who have opted in." Sandoz, 553 F.3d at 916 n.2 (citing Mooney, 54 F.3d at 1214); see also Comer, 454 F.3d at 546-47 (explaining that courts examine the question "more closely" after "all of the opt-in forms have been received and discovery has concluded" (citations and quotation omitted)). Factors relevant to the stage-two determination include: "factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." O'Brien, 575 F.3d at 584 (citing 7B Wright, Miller & Kane Federal Practice and Procedure § 1807 n.65 at 497 (3d ed. 2005)).[8] If the court finds then that employees are not "similarly

---

[8] The standard at the second stage is "less lenient," and the plaintiff's burden is "heavier." Morgan v. Family Dollar Stores, 551 F.3d 1233, 1261 (11th Cir. 2008) (citation omitted). The analysis, however, is still not a factor-by-factor calculus comparable to that required for certification of a Rule 23 class. Rather, when certifying a collective action, courts take a holistic view: "as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." Id. (citation omitted).

By contrast, the Circuit Courts in recent years have severely tightened the requirements for certifying a class under Rule 23. The First Circuit remains circumspect about "whether 'findings' regarding the class certification criteria are ever necessary," holding only that "when a Rule 23 requirement relies on a novel or complex theory as to injury . . . the district court must

*(continued next page)*

situated," it will decertify the class and dismiss the opt-in plaintiffs without prejudice.  Hipp, 252 F.3d at 1218 (citation omitted).

Prescott and Prudential disagree about which analytical stage of the FLSA certification inquiry should apply here.  Prudential argues that the more stringent decertification standard should apply because "[f]ive and a half months of discovery have taken place."  Def.'s Resp. at 13.  Prescott points out, however, that Prudential has submitted affidavits from other claims handlers

---

engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for the theory to succeed." Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.), 522 F.3d 6, 26 (1st Cir. 2008).  But other Circuits clearly require the trial judge to make factual findings by a preponderance of the evidence on all the Rule 23 criteria before certifying a Rule 23 class.  See Brown v. Kelly, 2010 U.S. App. LEXIS 12936, at *22 (2d Cir. N.Y. June 24, 2010) ("The Rule 23 requirements must be established by at least a preponderance of the evidence." (citation omitted)); In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257-58 (3d Cir. 2009) (same); Alaska Elec. Pension Fund v. Flowserve Corp., 572 F.3d 221, 228 (5th Cir. 2009) ("[L]oss causation . . . must be established at the class certification stage by a preponderance of all admissible evidence." (citation omitted)); Am. Honda Motor Co. v. Allen, 600 F.3d 813, 816 (7th Cir. 2010) (holding that a trial court "must perform a full Daubert analysis before certifying the class if the situation warrants").  These decisions purport to flow from the language of Rule 23, but policy concerns (such as the make-or-break decision of certifying a huge class action) clearly drive some of the decisions.

The Circuit Courts have not held that certification of an FLSA collective action requires such findings.  A few trial courts have employed Rule 23's criteria and procedures in determining whether to certify an FLSA collective action, see, e.g., Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263, 266-67 (D. Colo. 1990), but the vast majority of courts have concluded that Congress did not intend the FLSA to incorporate all the requirements of Rule 23, see La Chapelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975) (stating that Rule 23 and FLSA "class actions are mutually exclusive and irreconcilable"); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23." (citation omitted)); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 919 (finding that the trial court "improperly applied the precise rules from the Rule 23 context" to a collective action); O'Brien, 575 F.3d at 584-85 (finding that the trial court "improperly applied a Rule 23-type analysis" in a collective action certification"); Thiessen, 267 F.3d at 1105 ("Congress clearly chose not to have the FLSA standards apply to [collective actions] . . . [and to] interpret th[e] 'similarly situated' standard by simply incorporating the requirements of Rule 23 (either the current version or the pre-1966 version) would effectively ignore Congress['s] directive.").

I follow the majority view in putting aside the Rule 23 requirements where the FLSA is concerned.  The language of the FLSA is not at all similar to that of Rule 23.  Moreover, the policy concerns are quite different.  A collective action will be composed only of those who choose to join, and therefore it is unlikely to assume the mammoth proportions of some class actions.  E.g., Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 578 n.3 (9th Cir. 2010) (class of up to 1.5 million employees).  Indeed, here, if every eligible employee joins the lawsuit (an unlikely scenario), the number will be only around 225 employees.

who were never identified in discovery. Pl.'s Reply Mem. in Support of Mot. for Collective Action Certification at 2 (Docket Item 63). Prescott requested the names and addresses of these claims handlers during certification discovery to gather information relevant to the "similarly situated" determination. Id. Prudential objected that there was "no legitimate need for the subject information . . . [because Prescott] has available to her information and testimony from the several individuals who have already filed consents in the case" and because Prescott had already identified "more than twenty persons who she claims are similarly situated." Def.'s Mem. in Support of Objections to Pl.'s Document Requests at 4 (Docket Item 43). The Magistrate Judge sustained Prudential's objection, agreeing that the issue of conditional certification could be decided based on the information Prescott already had. Report of Hr'g & Order Re: Discovery Dispute at 2 (Docket Item 47). Fairness, then, dictates that I not consider materials that Prudential previously represented were unnecessary to the certification decision.

I recognize that courts sometimes do skip the first stage of the certification process when extensive discovery has taken place. See Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. Mar. 1, 2004). But it is unclear here that enough discovery has taken place to justify skipping the notice stage, particularly given the denial of discovery to Prescott. Much of Prudential's argument against certification rests on affidavits from fifty-three of its 225 claims handlers in Maine and New Jersey. See Def.'s Resp. at 18-19, 21; Digest of DCM Decl. (Ex. 18 to Def.'s Resp.) (Docket Item

61-19). Two of the opt-in plaintiffs have filed affidavits stating that company representatives asked them about unpaid overtime in the fall of 2009 (around the time the other affidavits were taken). The first, Janie Reid, refused to participate in an interview in the New Jersey office. <u>See</u> Reid Aff. ¶ 12 (Ex. F2 to Pl.'s Mot. for Certification) (Docket Item 56-22). The other, Michelle Cobbett, told a Prudential lawyer that she had worked overtime without pay at Prudential's Maine office; the lawyer said that she would "prepare a summary of [the] answers . . . and would call [Cobbett] back to sign a statement"; but the lawyer never did. <u>See</u> Cobbett Aff. ¶ 12 (Ex. F1 to Pl.'s Mot. for Certification) (Docket Item 56-21). There is thus some support for Prescott's contention that the Prudential affidavits were "selectively culled" or are otherwise unrepresentative. Pl.'s Reply at 7. I cannot be certain if information from other claims handlers would support Prescott's allegations or Prudential's defenses. Moreover, if I were to skip over the first stage inquiry, "some potential plaintiffs might not . . . have an opportunity to join the suit," and "the court might be deprived of crucial facts that would support . . . class treatment." <u>Leuthold v. Destination Am.</u>, 224 F.R.D. 462, 468 (N.D. Cal. 2004) (noting that number and type of employees who choose to opt into the class may affect the stage two inquiry). The prejudice to Prescott of skipping the notice stage could be significant, while prejudice to Prudential is minimal since it is able to move for decertification at the close of discovery. <u>See</u> <u>Wise v.</u> <u>Patriot Resorts Corp.</u>, 2006 U.S. Dist. LEXIS 97992, at *4 (D. Mass. Feb. 15, 2006) (declining to skip the notice stage even though the "bulk of discovery

[was] complete" because the plaintiffs were "manifestly entitled to take the first step of the two-step process towards obtaining approval to proceed with their collective action"); In re Aon Corp. Wage & Hour Empl. Practices Litig., 2010 U.S. Dist. LEXIS 34888, at *24-25 (N.D. Ill. Apr. 8, 2010) (declining to skip stage one despite extensive discovery, noting no prejudice to defendant).

I therefore assess Prescott's proposed collective action using the "fairly lenient" standard employed at the first stage of the FLSA certification inquiry.

**C.    *Has the Plaintiff Met Her Burden to Show that Other Employees Are "Similarly Situated," i.e., Subject to a Common policy or Practice?***

Prescott and Prudential disagree vehemently over whether Prudential had an illegal "Don't Ask, Don't Tell" policy.  Prudential maintains that it had appropriate time-recordkeeping systems and documented processes for seeking approval for working beyond the 37.5-hour workweek.  Def.'s Resp. at 17.  Any deviations from these policies were, it says, individual and only occasional, not meeting the standard for a collective action.  Id. at 17-18.  In support, it has presented its written overtime policy, depositions and declarations of various Prudential managers, and declarations from a group of Disability Claims Managers.  In particular, Prudential submits that it budgets for overtime and has paid overtime to Disability Claims Managers, including at least two of the Disability Claims Managers who have filed consents to opt into the case.  Simmons Decl. ¶ 8.  Prudential notes that in fact it has paid more in overtime wages than it had allocated for overtime in its budget.  Id.  Prudential relies on its own Disability Claims Manager affidavits to show that Disability Claims Managers work on different schedules; take lunch breaks; usually can

complete their work within 37.5 hours and can get help if needed; are not pressured not to record hours they work; and to the extent they work more than 37.5 hours in a week, do so by choice and without the knowledge of their supervisors. <u>See</u> Digest of DCM Decl.

Prescott, on the other hand, has provided deposition and affidavit testimony that she and Disability Claims Managers in both Maine and New Jersey[9] routinely work more than 37.5 hours per week without being paid; that they do so in order to meet productivity goals; and that Prudential's management knows that Disability Claims Managers (and at least some FML Examiners) work extra hours off the clock to meet deadlines, yet still assigns heavy workloads and tells employees that overtime will not be approved.

The question I must decide is whether there is sufficient evidence at this stage to justify notice to other employees to see whether they wish to join the lawsuit. I discount the evidence from claims handlers whose identity Prudential withheld during discovery, and I conclude that Prescott has presented sufficient evidence to meet her burden. Prescott has made a sufficient showing that disability claims handlers in Maine and New Jersey understood that Prudential, with some exceptions, would not approve payment of overtime and in fact did not pay employees for overtime work they performed; that by instituting company-wide metrics for performance, Prudential knowingly created a situation where disability claims handlers

---

[9] The parties have stipulated that Disability Claims Managers in Maine and New Jersey are subject to the same compensation and time-keeping requirements, receive the same training, and do essentially the same work. <u>See</u> Stipulation in Lieu of Rule 30(b)(6) Deps. ¶¶ 1-4 (Ex. B to Pl.'s Mot. for Certification (Docket Item 56)) (Docket Item 56-3).

would likely work extra hours and in fact did; and that Prudential managers, including at least one vice-president of long term disability claims in Maine, suffered or permitted them to do so. See Ordway Dep. 43-44, Jan. 14, 2010 (Ex. E4 to Pl.'s Mot. for Certification) (Docket Item 56-9). Prescott has therefore made a modest factual showing that there are similarly situated employees at Prudential who are victims of a common illegal practice. See 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time"; an employee's reason for doing the work is "immaterial."); Harvill v. Westward Communs., L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) ("An employer . . . cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." (citation omitted)); Hertz v. Woodbury County, 566 F.3d 775, 781 (8th Cir. 2009) ("[C]onstructive knowledge of overtime work is sufficient to establish liability under the FLSA."); Pforr v. Food Lion, Inc., 851 F.2d 106, 109 (4th Cir. 1988) (explaining that a plaintiff can meet her burden if it can reasonably be inferred that an employer had a pattern or practice of allowing off-the-clock work).[10]  Permitting the opt-in process to go forward and discovery

---

[10] I do not find the cases Prudential cites to be persuasive.  Prudential points out that in Simmons v. T-Mobile USA, Inc., 2007 U.S. Dist. LEXIS 5002, at *25 (S.D. Tex. Jan. 24, 2007), the district court denied conditional certification because the case involved "claims of 'off the clock' unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate[d] [the defendant's] clear, lawful written policies at some or many of . . . more than one hundred different retail locations."  See Def.'s Resp. at 20.  The Simmons court also recognized, however, that "collective actions have been conditionally certified in off-the-clock cases, and in cases with employees at various locations, and in cases where a defendants' written policies were commonly violated in practice."  2007 U.S. Dist. LEXIS 5002, at *25 (collecting cases).  Here, there are no allegations that there are hundreds of supervisors or locations.  There are only about 225 relevant employees (not supervisors) working in two locations subject to common management techniques and workflow metrics.  There are consistent statements about
*(continued next page)*

to be completed will enable a more informed decision at the next stage whether the conditional certification should become final or be revoked.

### (1) *Job Categories and Locations Belonging to the Collective Action*

Prescott and the current opt-in plaintiffs are all Disability Claims Managers (both DCM-I and DCM-II).[11]  At least one of the opt-ins has worked on the same team as FML Examiners, one opt-in reported to a supervisor in New Jersey, and one opt-in works in New Jersey.  Prescott has also offered evidence that Prudential's FML teams included Disability Claims Managers, that the FML teams were subject to the same general practices that form the

Prudential's overtime practices in both locations.  Prudential also cites West v. Border Foods, Inc., 2006 U.S. Dist. LEXIS 96963 (D. Minn. June 12, 2006), adopted by 2006 U.S. Dist. LEXIS 46506 (D. Minn. July 10, 2006).  See Def.'s Resp. at 20.  The plaintiffs in West alleged that they were improperly classified as nonexempt employees, used the same computer system to track their time, were subject to the same corporate hierarchy and that, due to the defendant's practice, were not paid overtime.  2006 U.S. Dist. LEXIS 46506, at *11.  The court denied conditional certification where the plaintiff showed only that six out of a potential class of 240 store managers had been required to work off the clock.  The court concluded that such a "limited sampling" did not support allegations of a common practice, especially since the defendant had a written policy of allowing overtime.  Id. at *19.  But see Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 537 (N.D. Cal. 2007) (finding West unpersuasive and concluding that individual determinations as to damages are irrelevant to certification); Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 539 (S.D. Tex. 2008) (declining to follow West's suggestion that "a lawsuit involving allegations of an informal policy requiring off-the-clock work cannot be litigated collectively where a large number of plaintiffs were employed at many different locations and the decision to allow or require off-the-clock work was carried out by individual managers"; "It simply cannot be that an employer may establish policies that create strong incentives for managers to encourage or allow employees to work off-the-clock, and avoid a FLSA collective action because a large number of employees at a number of different stores are affected.").

I conclude that here the limited sample of Disability Claims Managers and the evidence of Prudential's actual or constructive knowledge of unpaid overtime provides modest factual support to complete discovery and permit other Prudential claims handlers to offer their experiences before the appropriateness of a collective action is finally resolved at stage two of the certification process.  See Madden v. Corinthian Colleges, Inc., 2009 U.S. Dist. LEXIS 115331 at *8-10 (N.D. Ill. Dec. 8, 2009) (conditionally certifying collective action based on affidavits of two plaintiffs even though the defendant pointed to affidavits from employees stating that they had been properly paid overtime and to records showing that the defendant had paid overtime during the period in which the plaintiffs were employed, because the court concluded that these arguments went to the merits of the case and not to whether the plaintiffs were similarly situated to members of a prospective collective action).

[11] See note 1, supra.

basis of the Disability Claims Managers' claims, and that the FML unit was set up by a manager who worked in Maine and New Jersey. Given these facts and the parties' stipulations about Prudential's common practices and policies as to claims handlers in Maine and New Jersey, the plaintiff has made the requisite modest factual showing that Disability Claims Managers and FML Examiners in both Maine and New Jersey can be part of the collective action.

Prescott has not made the necessary factual showing relative to Disability Claims Technicians. None of the opt-in plaintiffs is a Disability Claims Technician. The question with regard to the Disability Claims Technicians is whether Prudential has improperly classified them as exempt in order to avoid the FLSA's wage provisions. To be sure, such a misclassification would violate the FLSA. See, e.g., Valerio v. Putnam Assocs., Inc., 173 F.3d 35 (1st Cir. 1999). But neither Prescott nor any of the opt-ins can claim to have suffered harm from such a violation. Moreover, a misclassification claim would involve different law and facts from Prescott's pattern and practice claim. To defend, Prudential would have to prove that Disability Claims Technicians are employed in a "bona fide executive, administrative, or professional capacity." Cash v. Cycle Craft Co., 508 F.3d 680, 683 (1st Cir. 2007) (quoting 29 U.S.C. § 213(a)(1)). That defense and those issues play no part in Prescott's claims. For example, the determination of whether the Disability Claims Technicians are properly exempt would require the presentation of facts pertaining to duties and salary. See Baden-Winterwood v. Life Time Fitness, 566 F.3d 618, 626-27 (6th Cir. 2009) (explaining that to be exempt an employee's position must

satisfy a duties test, 29 C.F.R. § 541.700; a salary-level test, 29 C.F.R. § 541.600; and a salary-basis test, 29 C.F.R. § 541.602); see also 29 C.F.R. §§ 541.100-710 (regulations pertaining to FLSA exemptions).  There is no dispute here about the duties of the Disability Claims Managers, their pay provisions, or the basis for their pay.  In sum, any claims related to overtime that Prudential's Disability Claims Technicians may have are fundamentally different from the claims advanced by Prescott.

### *(2)      Temporal Scope of the Collective Action*

The statute of limitations for a claim under the FLSA is "two years after the cause of action accrued" unless the claim involves a "willful violation."  29 U.S.C. § 255.  In that case, the limitations period is three years.  Id.  Willfulness is a question going to the merits of the case that I do not decide at this time.  At this stage of the certification process, justice is best served by notice reaching the largest number of potential plaintiffs, and I therefore employ the three years.  For a named plaintiff, the statute runs from the filing of the complaint, but the limitations period for an opt-in plaintiff runs from the date he or she files a consent to join the case.  Sandoz, 553 F.3d at 916-17; 29 U.S.C. §§ 256-57.

Here, Prescott proposes a three-year window for potential plaintiffs from New Jersey based on the FLSA's statute of limitations, but a six-year window for potential Maine plaintiffs based on the longer statute of limitations applicable to Maine wage law claims under 14 M.R.S.A. § 752.  Pl.'s Mot. for Certification at 1.  Because Prescott has moved for certification under the

FLSA, I conclude that the temporal scope of that collective action is set by the federal statute rather than by Maine state law. Accordingly, notice will be sent to all similarly situated employees, as defined below, who have worked for Prudential within three years of the date of the collective action notice.[12]

### (3)    *Status of the Current Opt-In Plaintiffs*

Six Prudential employees other than Prescott have filed consents with the court to become "party plaintiff[s]" in this case. 29 U.S.C. § 216(b). By filing consents, they have tolled the statute of limitations on their claims, see 29 U.S.C. §§ 256-57, and with the conditional certification of the collective action, the six opt-ins become plaintiffs. Under 29 U.S.C. § 216(b), the plaintiff is not required to seek formal amendment pursuant to Rule 15 to add the opt-in plaintiffs. See Kaiser v. At the Beach, Inc., 2009 U.S. Dist. LEXIS 109362, at *18-19 (N.D. Okla. Nov. 24, 2009) (citing Brown v. Dunbar, 189 F.2d 871, 874 (2d Cir. 1951)); see also Prickett v. Dekalb County, 349 F.3d 1294, 1297 (11th Cir. 2003) ("[B]y referring to them as 'party plaintiffs' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs."); Grayson, 79 F.3d at 1095 (holding that the 'similarly situated' requirement of § 216(b) is "more elastic and less stringent than the requirements found in Rule 20"). If the collective action is later decertified, they will be dismissed without prejudice, Hipp, 252 F.3d at

---

[12] As I stated in note 5, supra, Prudential has agreed to allow assertion of the Maine state law claim within any certified FLSA class. Presumably this court has supplementary jurisdiction for that purpose under 28 U.S.C. § 1367.

1218 (quoting Mooney, 54 F.3d at 1214), and may pursue their claims individually or seek to rejoin this suit under Rule 20.

## CONCLUSION

The plaintiff's Motion for Certification of Collective Action is **GRANTED IN PART**. A collective action is conditionally certified to include all current and former hourly disability claims handlers, regardless of job title, employed on an hourly basis by Prudential Insurance Company of America in Maine or New Jersey at any time within three years of the date that notice issues.

The parties shall confer and submit, on or before August 6, 2010, a joint proposed notice that sets forth the definition of the group in this collective action, the process by which a prospective participant can opt in, the date by which prospective participants must opt in, and any other relevant information about prospective participants' legal rights and remedies. If the parties cannot agree upon a joint notice, then they must submit competing proposed notices on or before August 6, 2010. No notice shall issue prior to approval.

The defendant is **ORDERED** to produce to the plaintiff by August 2, 2010, in paper form and in computer-readable form, a list of names and current or last known mailing addresses, e-mail addresses, and telephone numbers of its employees that belong to the collective action described above.

The parties are **ORDERED** to seek a case management conference with the Court before the filing of any motion for summary judgment or motion to decertify the collective action.

**SO ORDERED.**

**DATED THIS 27TH DAY OF JULY, 2010**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**