IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHELLE PRESCOTT, | ) | |
| | ) | |
| on behalf of herself and others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:09-cv-00322-DBH |
| | ) | |
| v. | ) | |
| | ) | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS CASE WITH PREJUDICE AND MEMORANDUM OF LAW IN SUPPORT

I.       Preliminary Statement

This motion, brought jointly by named plaintiff Michelle Prescott ("Prescott") together with all 21 of the others who opted to join and participate in this action ("Opt-in Plaintiffs") and Defendant The Prudential Insurance Company of America ("Prudential"), seeks approval of a settlement of claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and state law, and the dismissal of the entire case with prejudice. Prescott and the Opt-in Plaintiffs (collectively, "Plaintiffs") have requested that they remain unaware of the amount being paid to any other Plaintiff, and Plaintiffs together with Prudential now join in seeking approval of the settlement on a confidential basis. This motion is brought to promote the efficient settlement of claims, thereby conserving the resources of the Court and all parties by rendering further protracted litigation unnecessary. Movants respectfully request that the settlement be approved and that all claims together with the entire action be dismissed with prejudice.

LEGAL02/32945125v5

## II.        Background and Procedural History

Prescott brought this FLSA and state law wage-and-hour action against Prudential on July 22, 2009, seeking to represent herself and others similarly situated who consented to participate.  Prescott alleged that Prudential failed to pay Prescott and those similarly situated individuals for all time worked.  (Docket No. 1.)  Prudential denies all of the allegations asserted against it, and contends among other things that Plaintiffs did not perform uncompensated work, that Prudential had no knowledge of Plaintiffs' alleged off-the-clock work if any was performed, that Prudential prohibits off-the-clock work, and that Plaintiffs are not similarly situated. Plaintiffs, through counsel, assert with equal vigor that all claims are viable and well-founded.

Between August 11, 2009 and March 8, 2010, and before Prescott moved for conditional collective action certification of the case, six individuals filed consents to participate in the case should it be conditionally certified as a collective action.  (Docket No. 5 (Shannon Rose); Docket No. 22 (Laura Ordway); Docket No. 23 (Michael Carpenter); Docket No. 27, (Michelle Cobbett); Docket. No. 32 (Russell Lashua); Docket No. 49 (Janie Reid).)

After significant discovery (including over 15 depositions of Plaintiffs, Prudential representatives, and non-party witnesses; service of numerous interrogatories and production requests; and the production of thousands of documents), Prescott moved to conditionally certify the case as a collective action under the FLSA on March 17, 2010.  (Docket Nos. 56-59.)  On July 27, 2010, the Court granted in part and denied in part Prescott's motion, conditionally certifying a limited collective action consisting of current and former hourly disability claims managers ("DCMs") employed by Prudential over a three-year period in its Portland, Maine and Roseland, New Jersey offices.  (Docket No. 67.)  Following conditional certification, notice was sent to potential opt-in plaintiffs on September 3, 2010, informing them of the lawsuit and their

LEGAL02/32945125v5

right to opt into the litigation.  As a result, 15 additional individuals[1] filed consents and opted into the case. (Docket Nos. 79-91, 95, 99-100.)  Together with Prescott, these 15 individuals plus the six who filed consents before notice issued brought the total number of claimants participating in the case to 22, all of whom are movants herein.

Beginning on May 18, 2011, Prescott and all of the Opt-in Plaintiffs filed a series of motions attempting to amend and supplement the original complaint to add various state law claims related to alleged unpaid work and retaliation claims related to alleged adverse action purportedly tied to asserting rights under the FLSA.[2]  (Docket Nos. 107 (Motion to Reopen Deadline to Amend), 112 (Motion to Amend and Supplement Complaint), 119 (Motion to Amend Complaint), 125 (Motion to Clarify Proposed Amended Complaint).)  On August 31, 2011, the Magistrate Judge denied all of the motions to amend and supplement.  (Docket No. 129.)  On September 15, 2011, Plaintiffs objected to and appealed from the Magistrate Judge's decision and separately asked the Magistrate Judge to reconsider the decision.  (Docket Nos. 145-46).  Prudential responded in opposition to Plaintiffs' motions, and filed motions to strike. All of the referenced motions remain pending before the Court.

Beginning in May 2011, and pursuant to the Court's order, the parties began efforts to resolve their disputes through mediation.  (*See* Docket No. 106, 108, 117, 118.)  In mid-June, the parties selected JAMS and experienced mediators Michael Young and Robin Gise to conduct the mediation, and began conferring via conference calls on June 30 and July 8 in preparation for mediation.  An in-person mediation session was conducted in New York on July 14, 2011, and in-person mediation sessions continued on August 4 and 5, 2011.  Prescott and several of the

---

[1] While 16 individuals actually filed consent forms after notice issued, one was voluntarily dismissed by agreement of the parties.  (Docket No. 104-105.)

[2] Although it was never required to answer the allegations made in the proposed amended and supplemented complaints, Prudential denies that it is liable for any unpaid wages under any theory and denies all liability for retaliation.

- 3 -

other Plaintiffs participated directly in the mediation, attending personally in New York, sitting with counsel in Portland, or via close telephone contact.

Prior to and during the course of mediation, Prudential produced a large volume of information relating to Plaintiffs' allegations, including files kept by Prudential Human Resources and supervisors for each Plaintiff.  In addition, pursuant to a confidentiality agreement and for the limited purpose of mediation, Prudential provided Plaintiffs with detailed summaries and multiple analyses of data collected for each Plaintiff from Prudential's various technology systems (security swipe card records, disability claims management systems records, phone system records, time-keeping records, and payroll records) in order to give Plaintiffs the ability to better evaluate their claims and Prudential's defenses.  Prudential also provided detailed answers to Plaintiffs' inquiries regarding the data.  Plaintiffs likewise provided Prudential with information during the course of mediation.  In particular, Plaintiffs provided personal notes for certain Plaintiffs relating to their work hours, as well as summaries regarding each of the Plaintiffs' work histories.  Plaintiffs also provided information about their retaliation claims as to those Plaintiffs seeking to assert such claims.  The mediators were privy to these productions and assisted both sides in the evaluation of these materials.

Following the unsuccessful mediation sessions held on August 4 and 5, the parties continued to work through Mr. Young and Ms. Gise in an effort to resolve the dispute. Agreement was eventually reached, and on November 11, 2011, the parties exchanged signed counterpart agreements (together, the "Settlement Agreement"), reflecting a settlement of all claims, conditional upon the Court's approval.  While Prudential denies any and all liability, the parties have agreed to settle all claims of any nature, except those specifically reserved in the

- 4 -

LEGAL02/32945125v5

Settlement Agreement.  The parties now seek judicial approval of the Settlement Agreement via this motion.

Plaintiffs and Prudential submit that the settlement should be approved as fair and reasonable.  Movants further submit that granting the requested relief will promote the interests of justice and relieve this Court and all parties of further lengthy and expensive litigation. Movants request that the Court approve the settlement, after which this action and all claims asserted herein should be dismissed with prejudice.

### III.     Settlement Terms

The Settlement Agreement provides for certain payments to Plaintiffs, as well as payment to Plaintiffs' counsel in regard to attorneys' fees and costs.  All amounts were negotiated with the assistance of the mediators, and each Plaintiff was individually involved in negotiating the amount to be paid to him or her.  While the gross amount of fees and costs to be paid to Plaintiffs' counsel has been disclosed to all Plaintiffs, at the request of Plaintiffs, no one Plaintiff has been informed of the amount being paid to any other Plaintiff.  This approach and agreement regarding disclosure is clearly set out in the Agreement itself, and Plaintiffs together with Prudential now seek approval of the settlement on a confidential basis as called for by the Agreement.[3]  All payments will be made by Prudential directly, and the amounts payable to

---

[3] Given the confidential nature of the settlement and the confidentiality provisions contained in the Settlement Agreement, the parties propose to provide the Settlement Agreement to the Court for the Court's *in camera* review.  *See, e.g. Perez v. Carey Int'l, Inc.*, No. 06–22225–CIV, 2008 WL 4490750, at *6 (S.D. Fla. Sept. 26, 2008) (discussing that "[c]onfidentiality is often an important element in successful settlements" with respect to settlement and noting that the court conducted an *in camera* review of the settlement agreements pursuant to *Lynn's Food Stores, Inc. v. U.S., supra*); *Trinh v. JPMorgan Chase & Co.*, No. 07–CV–01666 W(WMC), 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009) (confidentially reviewing settlement agreement in camera and finding it fair and reasonable).

Plaintiffs will be subject to ordinary withholdings.  Payments are to be made within seven days of Court approval of the settlement and satisfaction of all other conditions for payment.

In exchange for the settlement payments, Plaintiffs agree, among other things, to release Prudential and related persons and entities from any and all claims, excluding certain specifically excluded claims.  Plaintiffs were given 21 days to consider the Settlement Agreement, and seven days after signing to revoke it.  All Plaintiffs signed the Settlement Agreement, and none has revoked.

## IV.  Argument and Citation to Authority

A.  Standard of Approval for FLSA Settlements.

Claims arising under the FLSA may be settled under the supervision of the district court after reviewing the settlement for reasonableness and fairness.  *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Medley v. Am. Cancer Soc'y*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028 at *1 (S.D.N.Y. July 23, 2010).  When court approval is sought, whether to approve an FLSA settlement lies within the sound discretion of the court.  *See Lynn's Foods Stores,* 679 F.2d at 1353.  If the court determines that the settlement is a "fair and reasonable resolution of a bona fide dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation," and "conserve[ing] scarce judicial resources."  *Id.* at 1354; *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *1 (E.D. Pa. July 16, 2009) (citation omitted).

Here, there is no question that a bona fide dispute exists.  Plaintiffs allege that Prudential violated the FLSA and state law by not paying for extra hours worked.  Prudential contends among other things that Plaintiffs did not perform uncompensated work, that Prudential had no knowledge of any of Plaintiffs' alleged off-the-clock work if it did occur, that Prudential

- 6 -

prohibits off-the-clock work, and that Plaintiffs are not similarly situated.

In determining whether a settlement is fair and reasonable under the FLSA, courts typically examine the following factors common to the review of class action settlements in the Rule 23 context:

(1) the existence of collusion behind the settlement;

(2) the risk, complexity, expense and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the experience and opinions of counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1530-31, n6 (11th Cir. 1994); *see also Almodova v. City and Cnty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *2 (D.Hawai'i Mar. 31, 2010) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998)) ( "[C]ourts have applied the factors for approval of class action settlements" in approving FLSA settlements.); *Trinh v. JPMorgan Chase & Co.*, No. 07–CV– 01666 W(WMC), 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009) (reviewing settlement in light of factors such as collusion, strength of plaintiffs' case; risk, expense, complexity, and duration of litigation; stage in proceedings and extent of discovery; and experience and views of counsel); *Hitchcock v. Orange Cnty, Fla.*, No. 604CV1722ORL28JGG, 2006 WL 3614925 at *3 (M.D. Fla. Dec. 11, 2006) (citing *Leverso* factors).  Further, courts recognize a strong presumption in favor of finding a settlement fair.  *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010); *Weller v. Dolgencorp, Inc.*, No. 3:09-CV-22, 2011 WL 121914, at *2 (N.D.W. Va. Jan. 13, 2011).

- 7 -

B.  The Terms of the Settlement Are Fair and Reasonable.

1.  The existence of collusion behind the settlement.

Both Plaintiffs' counsel and Prudential's counsel negotiated vigorously and extensively on behalf of their respective clients to achieve the best possible settlement under the circumstances.  Settlement negotiations spanned several months as each side advocated strongly for its positions and evaluated the other side's positions with the assistance of capable and experienced mediators.  This settlement was achieved in good faith through protracted and difficult arms-length negotiations where multiple offers and counteroffers were exchanged, with no collusion or lack of skill or zeal on the part of counsel.  There is no evidence of collusion or undue pressure.[4]

2.  The risk, complexity, expense and likely duration of litigation.

If the instant settlement is not approved, the parties must proceed in both resolving the question of whether collective action certification is ultimately warranted in the case, and attempting to prove their claims and defenses on the merits through multiple additional motions and perhaps trial(s).  Given the contested legal and factual issues, and the number of Plaintiffs, the litigation would be protracted and expensive for all.  Further, though Plaintiffs and Prudential have been litigating since July 2009 and a significant amount of discovery has taken place, little discovery and expert evaluation has been conducted by Plaintiffs into the electronic data

---

[4] Collusion is most often raised as a concern where settlement is agreed upon early in a case and before substantial information has been exchanged among the parties.  Courts reviewing settlements in such cases look to ensure that plaintiffs' counsel is not receiving undue payment at the expense of class members.  Here, the agreement presented for review was achieved after substantial information was exchanged, and plaintiffs' counsel represent that the amount to be paid in fees under the agreement is less than the lodestar amount determined by multiplying hours expended by related hourly billing rates.

LEGAL02/32945125v5

maintained by Prudential that is essential to presenting the facts of the case.[5]  Similarly, most of the Plaintiffs and their supervisors have yet to be deposed.  Resolution of all of the legal and factual issues involved in the case would add a very substantial amount of time and expense to what has already been a lengthy and costly proceeding (the docket currently lists over 160 entries).  Indeed, should certification survive and complete summary judgment not be granted, the case would proceed to jury trial involving an immense amount of complicated electronic data and conflicting anecdotal evidence, not to mention potential post-trial motions and appeals.  Should the Court approve the settlement now, the parties and the Court will preserve a great deal of resources.  As to risk, issues such as whether Plaintiffs worked unpaid hours, whether Prudential knew about it, and how many extra hours were worked could be decided in multiple ways regarding each Plaintiff, exposing the parties to an "all or nothing" outcome in many instances.  Such risk can be eliminated with settlement, and the parties have chosen to proceed in that fashion.

3.   The stage of proceedings and amount of discovery completed.

While a great deal of additional costly discovery would be necessary were the case to proceed, significant discovery has already been completed and even more informal production has taken place in the course of mediation.  Counsel for all parties have been able to review ample facts and evidence in order to evaluate the claims and defenses involved in the case.  Moreover, all counsel, as well as the mediators, have done a great deal of independent investigation and evaluation so as to be well informed of the factual circumstances involved in

---

[5] The summaries and analyses of electronic data previously provided to Plaintiffs were provided confidentiality for the sole purpose of mediation and are subject to return or destruction upon conclusion of the mediation.  If settlement were to fail and formal discovery pursued, Prudential would have to engage in extensive collection and production efforts to provide the raw data for Plaintiffs, and Plaintiffs would likewise need to engage in even more onerous efforts to evaluate the data.

this dispute.  As such, the proceedings have progressed well past the point required to permit informed settlement decisions.

> 4.  The probability of Plaintiffs' success on the merits.

While Plaintiffs feel strongly regarding their claims, Prudential adamantly denies liability and has numerous factual and legal defenses that it believes cast substantial doubt upon Plaintiffs' ability to maintain a collective action and ultimately succeed on the merits.  Prudential contends among other things that the Plaintiffs are not similarly situated and that the records from Prudential's technology systems do not show liability for unpaid work as alleged by Plaintiffs.  Prudential maintains that the likelihood that the action will be decertified is great, and that it will ultimately prevail on the merits regardless of the Court's decertification decision.  Plaintiffs, on the other hand, contend that violations of the law and damages can be established and that questions of fact will preclude summary judgment.  Given this disagreement over the Plaintiffs' chances of success, settlement at arm's length and on mutually acceptable terms is the ultimate indication of fairness.

> 5.  The range of possible recovery.

Plaintiffs bear a considerable risk of limited recovery or non-recovery if this case were to proceed on the merits.  Settlement at this juncture presents what is believed to be Plaintiffs' surest opportunity to obtain recovery in this matter.  While several Plaintiffs may be able to recover substantially more were all legal and factual issues decided in their favor, the Settlement Agreement reflects more than nominal payment to Plaintiffs and is acceptable to them given all of the risk, facts and circumstances involved in the case.

LEGAL02/32945125v5

6.   The opinions and experience of counsel.

Counsel negotiated vigorously at arms-length through experienced mediators to achieve the settlement set forth in the Settlement Agreement.  After reviewing the very substantial information at hand, counsel for all parties believe the settlement to be fair and reasonable under the circumstances.  Counsel for Prudential, as well as the team of counsel for Plaintiffs, have substantial experience in litigating and settling wage cases on a collective and class basis.  Overall, this settlement results from good-faith negotiation by experienced and able counsel in a mediation where counsel for all parties believe they achieved the best possible resolution available to their respective clients.

IV.   Conclusion

For the reasons set forth above, the movants respectfully request that the Court approve the Settlement Agreement, and dismiss this action with prejudice.

Respectfully submitted this 11th day of November, 2011.

| | |
|---|---|
| /s/ Edward S. MacColl | /s/ Robert P. Riordan |
| Edward S. MacColl | Robert P. Riordan |
| Nicholas Bull | Brett E. Coburn |
| Thompson, Bull, Furey, Ball & | Alston & Bird LLP |
| MacColl, LLC, P.A. | 1201 West Peachtree Street |
| 120 Exchange Street, Sixth Floor | Atlanta, GA 30309-3424 |
| P.O. Box 447 | |
| Portland, ME 04112-0447 | James R. Erwin |
| | Pierce Atwood LLP |
| Timothy B. Fleming | One Monument Square |
| Wiggins, Childs, Quinn & | Portland, ME 04101 |
| Pantazis, PLLC | |
| 1850 M Street, NW | Counsel for Defendant |
| Suite 720 | |
| Washington, DC 20036 | |
| | |
| Counsel for Plaintiffs | |

- 11 -

LEGAL02/32945125v5